IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) 1 Massachusetts Avenue, NW Washington, D.C. 20001 | * * * | CIVIL ACTION NO. |
| PLAINTIFF, | * | |
| v. | * | |
| WALGREEN CO. 108 Wilmot Road Deerfield, IL 60015 | * * | |
| SERVE ON: Corporation Service Company 1156 15th Street NW, Suite 605 Washington, D.C. 20005 | * * | |
| DEFENDANT. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff, National Railroad Passenger Corporation, also known as Amtrak ("Amtrak"), files this Complaint against the Defendant listed above, and for cause states:

### I.    PARTIES

1.    Amtrak is a District of Columbia corporation authorized by the Rail Passenger Service Act (set forth at 49 U.S.C. § 24101 *et seq.*). Amtrak's principal place of business is located at 1 Massachusetts Avenue, NW, Washington, D.C. 20001.

2.    Defendant Walgreen Co. ("Defendant") is an Illinois corporation with its principal place of business located in Illinois.

## II.    JURISDICTION AND VENUE

3.    The United States District Court for the District of Columbia has subject matter jurisdiction pursuant to 28 U.S.C. § 1349 because the United States holds, through the U.S. Secretary of Transportation, 100% of Amtrak's preferred stock and pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between Amtrak and Defendant.

4.    Venue in the United States District Court for the District of Columbia is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claim occurred in the District of Columbia and the property that is the subject of the action is situated in the District of Columbia.

## III.    BACKGROUND FACTS

5.    On November 12, 2014, Defendant, as tenant, and Union Station Investco, LLC ("USI"), as landlord, entered into a lease agreement ("Original Lease Agreement") for a term of ten years and three months by which Defendant agreed to lease certain space ("Premises") within a portion of the building commonly known as Washington Union Station in the District of Columbia.  A true and correct copy of the Original Lease Agreement is attached hereto as **Exhibit 1**.

6.    On December 8, 2020, the Original Lease Agreement between Defendant, as tenant, and USI, as landlord, was amended ("First Amendment").  A true and correct copy of the First Amendment is attached hereto as **Exhibit 2**. The Original Lease Agreement, as modified and amended by the First Amendment, shall hereinafter collectively be referred to as the "Lease Agreement."

7.    Defendant agreed to pay rent for leasing the Premises in the Lease Agreement.  The

First Amendment provides as follows:

"3.    Rent. (a) Notwithstanding anything in the Lease to the contrary, for the period of time commencing retroactively to March 1, 2016 and continuing through and until January 31, 2018, Annual Basic Rental shall be payable at the rate of $850,000.00 per annum, payable in equal monthly installments of $70,833.33 and otherwise in accordance with the Lease.

(b) Commencing retroactively to February 1, 2018 (the "Increase Date"), and on each anniversary of the Increase Date during the Extended Term thereafter, Annual Basic Rental shall increase by 2% annually.

(c) Commencing retroactively to the New Commencement Date, Annual Percentage Rental shall be due and payable to Landlord at the rate of 11% of Gross Sales per Lease Year in excess of the Breakpoint (as defined below) and otherwise in accordance with the Lease. The Breakpoint shall mean, for each Lease Year (or partial Lease Year) the applicable Annual Basic Rental for such Lease Year, divided by .11. For each day during each Lease Year that Tenant fails to open and operate its business in the Premises as required herein (other than on nationally recognized holidays) the Breakpoint shall be reduced by 1/365th. Annual Percentage Rental shall be prorated for any partial Lease Years. Notwithstanding the foregoing, Tenant has already provided statements of Gross Sales to Landlord through January 31, 2020 and Landlord agrees that that no Annual Percentage Rental is due Landlord through January 31, 2020. Additionally, notwithstanding anything in the Lease to the contrary, there shall be no Deemed Percentage Rental or Annual Stabilized Rent, which concepts are hereby deleted from the Lease in their entirety."

Ex. 2 at Section 3.

8.    On April 14, 2022, Amtrak filed an action entitled *National Railroad Passenger Corporation (Amtrak) v. Sublease Interest Obtained Pursuant To An Assignment And Assumption Of Leasehold Interest Made As Of January 25, 2007 With Said Property Interest Pertaining To*

3

*Described Leasehold Interests At Washington Union Station, et al.,* Case No. 1:22-cv-01043 (the "Eminent Domain Action"). In the Eminent Domain Action, Amtrak acquired USI's leasehold interest at Washington Union Station, including its interest in the Lease Agreement.

9.    On May 24, 2024, the Court in the Eminent Domain Action entered an order directing the transfer of possession of USI's interest in Washington Union Station to Amtrak as of 12:01 a.m. on July 15, 2024. On July 9, 2024, that Court extended the transfer date in a subsequent order by two weeks to July 29, 2024.

10.    Pursuant to these orders, Amtrak and USI jointly prepared a letter to tenants, including the Defendant. This letter, attached as **Exhibit 3**, was dated and sent on July 29, 2024. That letter introduced Amtrak as the new landlord at Washington Union Station and included instructions that from the date of the letter onwards Amtrak was now the landlord and that Defendant should deal with Amtrak with respect to all issues relating to Defendant's lease.

11.    Amtrak also sent a second letter to all tenants, dated and sent on July 29, 2024, including to Defendant specifically; this letter which is attached as **Exhibit 4**, provided that Amtrak was the new landlord at Washington Union Station and explained that effective July 29, 2024, all rent and other payments due under the Lease Agreement for the Premises by Defendant should be made to Amtrak.

12.    Both letters dated July 29, 2024, were received by Defendant via electronic mail on July 29, 2024.

13.    Defendant continued to make rent and other payments to USI, the landlord before possession transferred by court order, until January 2025. These rent and other payments were made contrary to the Orders in the Eminent Domain Action and the instructions given in the July

29, 2024 letters.

14.  Amtrak never authorized or consented to the Defendant transmitting rent and other payments to USI for the period of time from and after July 29, 2024.

15.  Amtrak did not receive payment for rent or other charges from Defendant for the period between August 2024 through January 2025.

16.  Amtrak has repeatedly requested that the Defendant pay it the amounts due under the Lease Agreement for the period August 2024 through January 2025.

17.  To date, Defendant has not paid Amtrak amounts due and owing under the Lease Agreement for the period August 2024 through January 2025.

18.  The amounts due under the Lease Agreement by the Defendant to Amtrak for the period August 2024 through January 2025 total $533,648.51. Such unpaid amount includes Base Rent in the amount of $488,191.38; Operating Expenses and Other Charges in the amount of $21,047.56; and Late Fees in the amount of $24,409.57, as permitted pursuant to the terms and conditions of the Lease Agreement.

## COUNT I
### (Breach of Lease Agreement)

19.  Amtrak incorporates by reference paragraphs one through eighteen above as if fully set forth herein.

20.  Defendant breached the Lease Agreement by failing to pay Amtrak the amounts due and owing for rent, operating expenses, fees and other charges for the period August 2024 through January 2025.

21.  Amtrak has fully performed its contractual obligations under the Lease Agreement.

22.    Defendant's failure to pay Amtrak the amounts owed under the Lease Agreement constitutes a material breach of the Lease Agreement.

23.    As a direct and proximate cause of Defendant's material breach, Amtrak has suffered monetary harm and damages in the amount of $533,648.51 with interest at an annual rate equal to the prime rate of Citibank, N.A., plus two percent, and attorneys' fees and costs continuing to accrue as authorized by Sections 5.8 and 18.3 of the Original Lease Agreement.

WHEREFORE, Plaintiff, National Railroad Passenger Corporation, also known as Amtrak, respectfully prays for judgment in its favor in the amount of $533,648.51 with interest at an annual rate equal to the prime rate of Citibank, N.A., plus two percent, and attorneys' fees and costs as authorized by Sections 5.8 and 18.3 of the Original Lease Agreement; and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**COUNSEL FOR PLAINTIFF**
**NATIONAL RAILROAD PASSENGER CORPORATION**

*/s/ Patricia McHugh Lambert*
Patricia McHugh Lambert, US DC Bar ID MD0008
Alejandro Camacho, US DC Bar ID MD0251
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
Telephone: 410-938-8800
Fax: 410-832-5650
plambert@pklaw.com
acamacho@pklaw.com