# EXHIBIT 2

## FIRST AMENDMENT TO LEASE AGREEMENT

THIS FIRST AMENDMENT TO LEASE AGREEMENT (the "Agreement") dated the 5th day of December , 2020 (the "Effective Date") by and between UNION STATION INVESTCO, LLC, ("Landlord") and Walgreen Co. ( "Tenant").

### WITNESSETH:

WHEREAS, Landlord and Tenant entered into a lease dated November 12, 2014 (as modified, the "Lease"), for certain premises containing approximately 14,778 square feet (the "Premises") located in what is commonly referred to as Union Station in Washington, D.C., (the "Shopping Center").

WHEREAS, the Rent Commencement Date (as defined in the Lease) occurred on March 1, 2016.

WHEREAS, Landlord and Tenant desire to modify certain terms contained therein as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and the sufficiency of which are hereby acknowledged, the parties agree as follows:

1.　　Defined Terms. All capitalized terms used herein which are not otherwise defined in this Agreement shall have the respective meanings ascribed to them in the Lease.

2.　　Lease Term. (a) Landlord and Tenant agree that notwithstanding anything in the Lease to the contrary, the current term of the Lease shall be extended until February 28, 2031.

(b) Landlord and Tenant agree that Section 1.1 B of the Lease shall be deleted in its entirety and replaced with the following:

>""Term" means a period of time commencing December 1, 2015 (the "Lease Commencement Date" and ending February 28, 2031."

For the purpose of clarification, notwithstanding anything in the Lease to the contrary, neither Landlord nor Tenant shall have any right to terminate the Lease whatsoever in connection with or as a result of the level of gross sales achieved by Tenant at any given time.

3.　　Rent. (a) Notwithstanding anything in the Lease to the contrary, for the period of time commencing retroactively to March 1, 2016 and continuing through and until January 31, 2018, Annual Basic Rental shall be payable at the rate of $850,000.00 per annum, payable in equal monthly installments of $70,833.33 and otherwise in accordance with the Lease.

(b) Commencing retroactively to February 1, 2018 (the "Increase Date"), and on each anniversary of the Increase Date during the Extended Term thereafter, Annual Basic Rental shall increase by 2% annually.

1

(c) Commencing retroactively to the New Commencement Date, Annual Percentage Rental shall be due and payable to Landlord at the rate of 11% of Gross Sales per Lease Year in excess of the Breakpoint (as defined below) and otherwise in accordance with the Lease. The Breakpoint shall mean, for each Lease Year (or partial Lease Year) the applicable Annual Basic Rental for such Lease Year, divided by .11. For each day during each Lease Year that Tenant fails to open and operate its business in the Premises as required herein (other than on nationally recognized holidays) the Breakpoint shall be reduced by 1/365[th]. Annual Percentage Rental shall be prorated for any partial Lease Years. Notwithstanding the foregoing, Tenant has already provided statements of Gross Sales to Landlord through January 31, 2020 and Landlord agrees that that no Annual Percentage Rental is due Landlord through January 31, 2020. Additionally, notwithstanding anything in the Lease to the contrary, there shall be no Deemed Percentage Rental or Annual Stabilized Rent, which concepts are hereby deleted from the Lease in their entirety.

(d) Within 10 business days following the Effective Date hereof, Tenant shall be required to pay to Landlord the sum of $427,195.47 in order to settle all past due amounts owed to Landlord under the Lease (the "Payment"). Upon Landlord's timely receipt of the Payment, Tenant shall be current in all amounts due Landlord under the Lease as of the Effective Date and Landlord's notices of default under the Lease which have been sent to Tenant which predate the Effective Date shall be deemed withdrawn.

(e) Except as expressly set forth herein, during the Extended Term, Tenant shall remain obligated to pay all amounts due and payable by Tenant under the Lease in the manner set forth in the Lease.

4.      Renewal Terms Options to Renew.  Provided this Lease is in effect and no Event of Default  has occurred and is continuing either at the time Tenant exercises its option to renew, and at the time the Renewal Term commences, Landlord hereby grants to Tenant the right and option to renew this Lease for two (2)  Renewal Terms, each for  a period of five (5) years, upon the same terms, covenants, and conditions that exist for the Initial Term, except for the Annual Basic Rental, the construction provisions, and any other terms or conditions, which, either expressly or by their nature, apply only to the Initial Term.  The options to renew shall be exercised, if at all, by Tenant's delivery of written notice to Landlord on or before the date that is three hundred sixty-five (365) days prior to the last day of the Term of this Lease, time being of the essence.

Commencing with the first Lease Year of the first Renewal Term, Tenant shall pay to Landlord Annual Basic Rental in an amount equal to $1,121,556.95 per annum, payable in equal monthly installments on the first day of each month of the term in the amount of $93,463.08. Commencing on the second Lease Year of the first Renewal Term the Annual Basic Rental shall increase by 2% at the conclusion of each Lease Year period of the Term.

Commencing with the first Lease Year of the second Renewal Term, Tenant shall pay to Landlord Annual Basic Rental in an amount equal to the greater of (i)$1,238,289.50 per annum, payable in equal monthly installments on the first day of each month of the term in the amount of $103,190.79; and (ii) the Fair Market Value for the Premises as of the first Lease Year of the

2

second Renewal Term. Commencing on the second Lease Year of the Renewal Term the Annual Basic Rental  shall increase by 2% at the conclusion of each Lease Year period of the Term.

Fair Market Value

The "Fair Market Value" shall mean the fair market rental value of the Premises based on net, net, net rents of comparable premises in the vicinity of the Premises for the Second Renewal.  If Tenant provides written notice of election to exercise the second Renewal Option, then within sixty (60) days of Tenant's notice, Landlord shall deliver to Tenant Landlord's estimate of the Fair Market Value for the first Lease Year of the second Renewal Option Term, and said amount shall constitute the Fair Market Value unless, within fifteen (15) days after the giving of such estimate, Tenant shall notify Landlord that it disputes such estimate and states its estimate of the Fair Market Value for the second Option Term. Landlord and Tenant agree to use good faith efforts to attempt to resolve the dispute.  If such dispute shall not be resolved, and a Fair Market Value shall not be agreed upon within thirty (30) days after Tenant gives Landlord notice that it disputes Landlord's estimate of the Fair Market Value, then, either party may elect to have such dispute submitted to arbitration in accordance with the provisions below and the Fair Market Value shall be determined in accordance with the instructions provided therein.  After a determination by arbitration of the Fair Market Value for the second Option Term, the Annual Basic Rental so determined after the arbitration shall be payable during the first Lease Year of the second Option Term, provided however that in no event shall the Annual Basic Rental payable during the first Lease Year of the second Option Term be less than an amount equal to _____. Upon determination of the Annual Basic Rental for the first Lease Year of the second Option Term, Landlord and Tenant shall execute, acknowledge and deliver to each other an agreement specifying the amount of the Annual Basic Rental for the first Lease Year of the second Option Term (but any failure to execute such an agreement shall not affect Tenant's obligation to pay and Landlord's right to receive such Annual Basic Rental).

If arbitration is elected, then and in such event, the Fair Market Value for the Demised Premises for the Option Term shall be determined as follows:

(a)     Within thirty (30) days after notice by either party requesting arbitration of the issue (i) the parties shall agree upon a single arbitrator to determine such fair market annual rental value and (ii) each party shall simultaneously deliver to the other on a certain date reasonably agreed upon between Landlord and Tenant within such thirty (30) day period a determination (referred to as a "Fair Market Determination") of what such party believes is the fair market annual rental value of the Demised Premises as of the commencement of the applicable Renewal Term.  If Landlord and Tenant shall have failed to agree upon such single arbitrator within such period of thirty (30) days, then such single arbitrator shall be appointed by the American Arbitration Association, or its successor pursuant to its rules for commercial matters, or if at such time such association is not in existence and has no successor, then such single arbitrator shall be appointed by the presiding Justice of the Appellate Division, First Department, of the Supreme Court of the State of New York, or any successor court, upon request of either Landlord or Tenant, as the case may be.

3

(b)	Within ten (10) days following the selection or appointment of the single arbitrator, each party shall deliver to such arbitrator such party's Fair Market Determination.

(c)	The arbitrator to be selected or appointed as above provided, as the case may be, shall be a real estate appraiser or broker having at least fifteen (15) years of experience in such field in the District of Columbia.

(d)	The arbitrator, selected or appointed as aforesaid, forthwith shall determine the issue and render its decision as promptly as practicable, choosing either Landlord's or Tenant's Fair Market Determination, and if only one (1) party submits a Fair Market Determination to the arbitrator then the arbitrator shall choose the Fair Market Determination submitted.  The decision of such arbitrator shall be in writing and shall be final and binding upon Landlord and Tenant whether or not a judgment shall be entered in any court.  Duplicate original counterparts of such decision shall be sent by the arbitrator to both Landlord and Tenant.

(e)	The arbitrator, in arriving at its decision as to which Fair Market Determination to accept, shall be entitled to consider all testimony and documentary evidence which may be presented at any hearing as well as facts and data which the arbitrator may discover by investigation and inquiry outside of such hearings.  The arbitrator shall be bound by the provisions of this Lease and shall not add to, subtract from, or otherwise modify such provisions.  The cost and expense of such arbitration shall be borne equally by Landlord and Tenant, except that each party shall pay its own counsel fees and expenses.  In addition, in arriving at its decision as to which Fair Market Determination to accept, the arbitrator shall also consider the following criteria:

(i)	that the definition of Landlord's Tax Liability shall continue to apply during such Renewal Term

(ii)	the fact that Landlord shall not be obligated to perform any work in the Demised Premises to prepare the same for Tenant's occupancy;

(iii)	the fact that Tenant shall not be entitled to any free rent or other similar credit against the Fixed Rent; and

(iv)	the fact that Landlord is not obligated to pay a brokerage commission with respect to the relevant Renewal Term.

5.	Broker. Tenant and Landlord represent and warrant to the other that except as expressly set forth below, there are no claims for brokerage commissions or finders' fees in connection with the execution of this Agreement.  Tenant and Landlord agree to indemnify the other for any breach of their respective representations in this Section, including, without limitation, the cost of counsel fees.

6.	Lease.

A.	Except as modified by this Agreement, the Lease and all of the covenants, agreements, terms and conditions thereof shall remain in full force and effect and are hereby in all respects

4

ratified, confirmed and incorporated herein. In the event of any conflict between the Lease, this Agreement or any other amendment or addendum thereof, the document later in time shall control. The covenants, agreements, terms and conditions contained in this Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns. Tenant agrees and acknowledges that there is no default under the Lease or in the observance or performance of any other agreement, covenant, term or condition to be observed or performed by Landlord, and Tenant has no knowledge of any state of facts or events which, with the passage of time or the giving of notice, would constitute a default by Landlord.

B.     The persons executing this Agreement on behalf of Landlord and Tenant represent and warrant that they do so with full authority to bind the parties hereto to the terms, conditions and provisions hereinabove set forth.

C.     The parties hereto represent and warrant that they have the authority and all requisite approvals to enter into this Agreement. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors and assigns. The submission by Landlord to Tenant of the Agreement shall have no force or effect, nor confer any rights or impose any obligation upon either party unless and until execution thereof by Landlord and the unconditional delivery of a fully executed original thereof to Landlord and Tenant or their representatives. This Agreement may be executed in counterparts, in which case all such counterparts together shall constitute one and the same instrument which is binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterpart. Facsimile or PDF signatures shall be treated as original signatures hereon.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

LANDLORD: UNION STATION INVESTCO, LLC

By: _____
Name: Daniel Levy
Title: Authorized Signatory

TENANT: Walgreen Co.

*RNS*

KM
12/7/20

By: _____
Name: CHRIS NOBLE
Title: DVP - RE, Dilygefee

5

6

WUS-USI TRANSITION DOCS033804 05/31/24